## Arguments

Mr.Quinn-Goncalves would have been released at the completion of his sentence in July,2023 see attached email chats between Sheriff Donna Buckley and myself.

I took the time to drive to ICE in Burlington Mass on 03/23/2023 making them aware of Igor's parole release date, the supervisor informed me that Barnstable county no longer works with ICE. ICE never received the parole papers from the jail to pick up Igor and I helped to arrange the transportation. Therefore ICE would not have detained Igor if he did not voluntarily surrender himself to ICE.

He did so with the expectation that he would be bond eligible by an immigration judge.

**The First Circuit, in a decision by an evenly divided en banc court, affirmed the judgments of the district courts rejecting Rojas and holding that INA § 236(c) does not apply to people whom ICE fails to detain upon release from relevant criminal custody.**

**Castaneda v. Souza, 810 F.3d 15 (1st Cir. 2015) (en banc)**
The First Circuit subsequently vacated a ruling of U.S. District Court for the District of Massachusetts prohibiting the government from subjecting individuals to mandatory detention in Massachusetts if it failed to detain them within 48-hours after their release from relevant criminal custody (excluding weekends and holidays). The Court remanded so that the district court could consider what constitutes a "reasonable" gap in custody for purposes of INA § 236(c).

**Gordon v. Lynch, 842 F.3d 66, 71 (1st Cir. 2016)**
However, pursuant to a grant of interim relief by the district court, the 48-hour rule remains in place in Massachusetts pending conclusion of proceedings on remand. Thus, detainees in Massachusetts are presently entitled to a bond hearing **if ICE does not detain them 48-hours after their release from relevant criminal custody (excluding weekends and holidays).**
Gordon v. Napolitano, 3:13-cv-30146-MAP (D. Mass. Feb. 10, 2017) (ECF 199) (order granting interim relief)

When construed to avoid constitutional concerns, INA § 236(c) should not apply where the client has a substantial challenge to the ground of deportability or inadmissibility. This claim is particularly strong if the IJ has already rejected the government's charge, even if the government has appealed the decision to BIA.
See Tijani v. Willis, 430 F.3d 1241, 1246-47 (9th Cir. 2005) (Tashima, J. concurring)
Demore v. Kim, 538 U.S. 510, 577-78 (2003) (Breyer, J, dissenting)

Casas v. Devane, No. 15-cv-8112, 2015 WL 7293598 (N.D. Ill. Nov. 19, 2015) (holding mandatory detention of person with good faith challenge to removal unconstitutional; petitioner sought post-conviction relief from guilty plea due to ineffective assistance of counsel)

Mr.Quinn-Gonvalves should be treated differently than other criminals detained immediately after being released from custody as he voluntarily surrendered himself to ICE and would have otherwise been free to leave the jail as the Sheriff explain to Igor and I that Barnstable County Correctional Facility does not work with ICE.

Mr. Quinn-Goncalves has a strong case against deportability because he is married to a United States citizen and has appealed to the BIA in his asylum case. Mr. Quinn-Goncalves has applied for a lawyer for post conviction relief, again there is no foreseeable removable
**(see attached documentation pertaining to)**
**(applied for post conviction)**
**(I-130 alien relative petition)**
**(appeal to BIA)**

Moreover, even if the client concedes deportability or inadmissibility on a ground that triggers mandatory detention, INA § 236(c) should not apply where the client has a substantial claim to relief from a removal order (e.g., INA § 212(c), cancellation, adjustment, asylum, U-visa, etc.). This argument is particularly strong if IJ has already granted such relief, even if the government has appealed the grant to the BIA.

See Papazoglou v. Napolitano, No. 1:12-cv-00892, 2012 WL 1570778 (N.D. Ill. May 3, 2012) (holding mandatory detention of LPR whom IJ had granted new adjustment of status to lawful permanent residence unconstitutional)
Cf. Krolak v. Ashcroft, No. 04-C-6071 (N.D. Ill. Dec. 1, 2004) (holding mandatory detention under INA § 236(c) unconstitutional as applied to an individual who had a bona fide citizenship claim) (copy attached)

But see Gayle v. Johnson, 4 F. Supp. 3d 692 (D.N.J. 2014), rev'd and remanded 838 F.3d 297 (3d Cir. 2016) (holding that the term "deportable" in INA § 236(c) refers only to whether individuals are properly charged under a criminal ground of deportability).

If INA § 236 cannot be construed to prohibit the mandatory detention of individuals with substantial challenges to removal, it violates due process.
See, e.g., Papazoglou v. Napolitano, No. 1:12-cv-00892, 2012 WL 1570778 (N.D. Ill. May 03, 2012).

# PROLONGED DETENTION WITHOUT A BOND HEARING

**A. prolonged detention under INA §§ 235(b), 236(a), and 236(c).**

**1. Supreme Court**

*In Jennings v. Rodriguez, --- S.Ct. ----, 2018 WL 1054878 (2018)*, the Supreme Court reversed a decision by the Ninth Circuit interpreting the INA to provide a custody hearing to individuals detained pending their removal cases for six months. The Court held that INA §§ 235(b) and 236(c) authorize detention until the conclusion of removal proceedings and individuals detained under those provisions have no statutory right to a custody hearing before an immigration judge. The Court also held that INA § 235(a) does not entitle individuals to a periodic bond hearing every six months. However, the Court remanded to the Ninth Circuit to address whether the Due Process Clause requires a custody hearing over prolonged detention.

*In Demore v. Kim,* the Supreme Court upheld mandatory detention under INA § 236(c) for the "brief period necessary for removal proceedings"—a period the Court described as averaging 45 days for those who do not appeal an IJ order, and 5 months for those who do. 538 U.S. 510, 513 (2003). Demore did not address the constitutionality of prolonged mandatory detention.

Jennings abrogates the rulings of six circuit courts construing INA § 236(c) to authorize mandatory detention for only a reasonable period of time. However, detainees can still seek a custody hearing over their prolonged detention on due process grounds. Moreover, because the circuit court decisions concluded that prolonged detention without a hearing would raise serious due process concerns, they remain strong persuasive authority for those due process claims.

• First Circuit: Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016)

• Second Circuit: Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015)

• Sixth Circuit: Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003) (requiring release when mandatory detention exceeds a reasonable period of time)

• **Ninth Circuit:** Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), cert. granted sub. nom. Jennings v. Rodriguez, No. 15-1204; Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013)

• **Eleventh Circuit:** Sopo v. Attorney General, 825 F.3d 1199 (11th Cir. 2016)

2. Third Circuit

The Third Circuit has held as a constitutional matter that due process prohibits mandatory detention for only an unreasonable period of time. Where detention has become unreasonable, the person must receive a custody hearing where government bears the burden of justifying continued detention based on flight risk or danger.

• *Diop v. ICE/Homeland Security, 656 F.3d 221 (3d Cir. 2011)*
• *Leslie v. Attorney General, 678 F.3d 265 (3d Cir. 2012)*
• *Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469 (3d Cir. 2015)*

The Supreme Court in Jennings did not address whether INA § 241(a)(6) requires a custody hearing over prolonged detention. Several courts have held so.

• See Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) (construing INA § 241(a)(6) to require a bond hearing before the IJ at six months where the government bears the burden of proof; holding the post-order custody review process to be inadequate to protect against unlawful prolonged detention).

o NB: The Ninth Circuit has held that due process requires that the government bear the burden of justifying an individual's detention by clear and convincing evidence at prolonged detention hearings. See Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).

## DETENTION OF ARRIVING ALIENS UNDER INA § 235(b)

• Arriving aliens who are referred for removal proceedings may seek release on humanitarian parole. See 8 U.S.C. § 1182(d)(5); see also 8 C.F.R. §§ 212.5(b)(5), 235.3(c).

- The statute and regulations require ICE to "make individualized determinations of parole." Jean v. Nelson, 472 U.S. 846, 857 (1985). Several courts in cases construing predecessor parole statute and regulations have held that the immigration authorities may not "decide[ ] parole applications on the basis of broad, non-individualized policies," but instead must base its decisions on individualized assessments of flight risk and danger. Marczak v. Greene, 971 F.2d 510, 515 (10th Cir. 1992); accord Diaz v. Schiltgen, 946 F. Supp. 762, 764-65 (N.D. Cal. 1996); Gutierrez v. Ilchert, 702 F. Supp. 787, 790 (N.D. Cal. 1988).3

- The ICE Parole Directive generally provides for the parole of asylum seekers with a credible fear where they establish their identity and the fact that they pose no danger or flight risk.

  o See ICE Directive 11002.1: Parole of Arriving Asylum Seekers Found to Have a Credible Fear of Persecution or Torture.4

- One federal district court has held ICE is required to follow its own Parole Directive.
  o Abdi v. Duke, --- F. Supp. 3d ----, 2017 WL 5599521 (W.D.N.Y. 2017) (applying Accardi doctrine).

Mr.Quinn-Goncalves has been denied humanitarian parole even though he demonstrated he is **not a flight risk** by voluntarily surrendering himself to ICE when he could have left the jail at the completion of his sentence in which he only had 3 months left to serve but his disabled U.S citizen wife and children needed him home as soon as possible. He was acting in a **good faith effort to abide by immigration laws**. He is married to a U.S. citizen and has a strong basis for legal status here in the U.S. this also demonstrates that he is not a flight risk, and shows strong ties to the community.

Mr.Quinn-Goncalves has nothing in his background of being a danger to the community. He has **nothing of violence in his record**, He has **NO aggravated felonies** in his record. This was his **first conviction** and he spent **less than a year in jail**. He has no mental health problems that would pose a risk to the community. He was immediately honest with police when questioned and served his time and has continued to pay for his mistakes. Igor was desperate for money when he committed the crimes, he was abandoned by his father and separated from his wife and stepkids. The boss he was working for was not paying him and he needed money for food and shelter. Igor should be given a second chance as he has been in the U.S. for five years and never committed crimes before this time in his life.

Respectfully,
Kerry Quinn-Goncalves